CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

NOV 27 2018

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## DANVILLE DIVISION

**NILAY C. PATEL, DO,**

      **Plaintiff,**

**v.**                                 **Case No.** 4:18CV00065

**SOVAH HEALTH DANVILLE CI**
**D/B/A DANVILLE REGIONAL**
**MEDICAL CENTER, LLC,**

**Serve:**
      **R/A CT Corporation System**      **JURY TRIAL DEMAND**
      **4701 Cox Road, Suite 285**
      **16th Floor**
      **Glen Allen, VA 23060**

**and**

**LIFEPOINT HEALTH, INC.,**

**Serve:**
      **R/A CT Corporation System**
      **300 Montvue Road**
      **Knoxville, TN 37919**

      **Defendants.**

## COMPLAINT

The above-named Plaintiff, Nilay C. Patel, DO (hereinafter, "Dr. Patel" or "Plaintiff"), by counsel, states as his Complaint against Defendant SOVAH Health Danville CI d/b/a Danville Regional Medical Center, LLC (hereinafter, "SOVAH"), and Defendant LifePoint Health, Inc. (hereinafter, "LifePoint") (collectively,

1

"Defendants"), the following:

## I. JURISDICTION

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by the Uniformed Services Employment and Reemployment Rights Act of 1994, Title 38 U.S.C. §§ 4301-4335 ("USERRA"). *See* §§ 4323(a)(3), (b); *see generally* 28 U.S.C. §§ 1331, 1343(a)(4).

2. This Court has supplemental jurisdiction over Plaintiff's state law claims as alleged herein, pursuant to 28 U.S.C. § 1367, as the acts and/or omissions giving rise to the violations of these claims arose from the same basis of operative fact and form part of the same case or controversy under the law. Pursuant to 28 U.S.C. § 1367(a), these claims are so related to claims involving original jurisdiction that they form part of the same case or controversy.

3. Plaintiff Dr. Patel is a resident of Chapel Hill, North Carolina.

4. Defendant SOVAH is incorporated and does business within the Commonwealth of Virginia. Therefore, due to its contacts within the Commonwealth, SOVAH avails itself to the jurisdiction of this Court.

5. Defendant LifePoint is incorporated in the State of Delaware, and does business within the Commonwealth of Virginia. Therefore, due to its contacts within the Commonwealth, LifePoint avails itself to the jurisdiction of this Court.

6. This Court has diversity jurisdiction over all claims plead herein pursuant to 28 U.S.C. § 1332, as the parties have diversity of citizenship and the amount in controversy exceeds the statutory threshold.

2

7.   Venue is appropriate as the acts and/or omissions of Defendants from which these causes of action arise, occurred in Danville, Virginia, within the Western District of Virginia, Danville Division. *See* 28 U.S.C. § 1391(b)(2).

## II. THE PARTIES

8.   Dr. Patel, a physician and disabled military veteran, is a current resident of Chapel Hill, North Carolina.

9.   Defendant SOVAH, a subsidiary of LifePoint, operates the hospital known as Danville Regional Medical Center, located at 142 South Main Street, Danville, Virginia, 24541, and owns a number of affiliated physician practices.

10. Defendant LifePoint is a holding company of affiliated entities that own and operate hospitals and other healthcare providers in more than 70 communities throughout the United States.

## III.  FACTUAL ALLEGATIONS

11. Dr. Patel was hired by Danville Physician Practices, LLC, a wholly-owned affiliate of SOVAH, in or about November of 2016, to work as a physician at Defendants' SOVAH Family Medicine – Mt. Hermon office, which is located at 2767 Franklin Turnpike, Danville, Virginia 24540 (hereinafter, "Mt. Hermon").

12. Dr. Patel signed a fixed-term three (3) year Physician Employment Agreement, effective January 1, 2017, and encompassing two months of backdated "PRN" employment with Defendants from November 1, 2016 through December 31, 2016 (hereinafter, "Agreement", attached hereto as **EXHIBIT A**).

13. Prior to his wrongful termination on or about April 30, 2018, Dr. Patel earned

3

an annual salary of approximately $300,000, inclusive of specified bonuses and other incentives, and was offered health, vision, and dental insurance, and certain reimbursement opportunities.

14. During his employment with Defendants, Dr. Patel's work performance was excellent, and met or exceeded Defendants' legitimate business expectations.

**Defendants Discriminated Against Dr. Patel in Violation of USERRA**

15. Dr. Patel is a distinguished veteran who served in Iraq as a member of the United States Navy (hereinafter, "Navy"), and sustained injuries in the line of duty.

16. Subsequent to his active service in the Navy from 2005 to 2011, and throughout his employment with Defendants until January 2018, Dr. Patel served in the Navy.

17. Unfortunately, during his employment with Defendants, Dr. Patel was subjected to multiple negative comments and criticisms from his supervisors with regard to Dr. Patel's mandatory Navy training and drill obligations.

18. Dr. Patel's supervisors also discouraged Dr. Patel from remaining in the Navy Reserves, and keeping his drill commitments.

19. Specifically, SOVAH Market President and Chief Executive Officer Alan Larson directly advised Dr. Patel that Dr. Patel should "quit" his Navy obligations.

20. In addition, SOVAH Assistant Clinical Director Steven Evans admonished Dr. Patel in 2017 for participating in mandatory scheduled Navy drills, indicated to Dr. Patel that his military commitments would be "tough on the clinic," and that the clinic would need to close on certain days if Dr. Patel "insisted" on keeping this obligation.

21. Mr. Evans also discouraged Dr. Patel from participating in Navy drill days.

4

22. Additionally, Office Manager June Hill improperly requested that Dr. Patel "switch" his previously scheduled drill days/weeks on multiple occasions in 2017 and 2018 and, upon information and belief, was directed to do so by Director Patricia Veneto and Danville Market Manager for SOVAH Physician Practices Donna Richardson.

23. Ms. Hill, similarly, made disparaging comments about Dr. Patel's military obligations.

24. Defendants' resistance to Dr. Patel's military training and drill commitments were detrimental to both Dr. Patel and his military unit. Indeed, "[a]s the Officer in Charge it was critical for [Dr. Patel] to be available for planned provider coverage and Unit administration [and] his absences were detrimental to mission readiness and accomplishment." *See* May 23, 2018 letter from Timothy H. Wones, MSHS, Officer in Charge – Medical Branch, Camp Lejeune, North Carolina, attached hereto as **EXHIBIT B**.

25. Upon information and belief, these, and other, SOVAH supervisory employees maintained an unlawful discriminatory animus against Dr. Patel, in violation of USERRA, based upon Dr. Patel's military status and need for related scheduling accommodations and leave.

26. USERRA prohibits employers from discriminating against employees on the basis of their military status. *See* 38 U.S.C. §§ 4311(a) (prohibiting discrimination "against persons who serve in the uniformed services" through the denial of "any benefit of employment by an employer on the basis of that membership."), 4311(b)

5

(prohibiting an employer from taking an "adverse employment action against any person because such person . . . has taken an action to enforce a protection afforded any person under this chapter . . . .").

27. Upon information and belief, Defendants discriminated against Dr. Patel, and his military status was a motivating factor in Defendants' decision to wrongfully terminate Dr. Patel's employment on or about April 30, 2018. *See* 38 U.S.C.A. § 4311(c)(1).

**Defendants Terminated Dr. Patel's Employment
After He Complained About Patient Safety Issues**

28. During his employment with Defendants, Dr. Patel was a dedicated patient advocate.

29. Dr. Patel, accordingly, articulated his concerns related to inadequate patient oversight, the unsafe and high volume of patients for which he was responsible, and related patient safety issues to his supervisors on multiple occasions.

30. As an example, Dr. Patel oversaw a nurse practitioner, Andy Quinn, at Defendants' SOVAH Family Medicine – Brosville office (hereinafter, "Brosville"). Mr. Quinn was inexperienced and made numerous mistakes, yet was responsible for the care of a high volume of SOVAH patients.

31. In an effort to maintain safer practices and better standards of patient care, Dr. Patel routinely requested to review Mr. Quinn's charts. Upon information and belief, this was an unusual occurrence, as many nurse practitioners do not receive adequate

oversight, and Defendants do not require this level of supervision over their non-physician employees.

32. Similarly, a nurse practitioner working in the Mt. Hermon office, Liz Harris, often confided to Dr. Patel that she received no supervisory guidance from Defendants with regard to supervision or oversight of her patient-related duties.

33. Dr. Patel addressed his concerns regarding these patient safety and oversight issues to his SOVAH supervisors on several occasions.

34. However, despite Dr. Patel's numerous complaints, Defendants failed to increase staffing, revise its supervisory and oversight practices, or otherwise meaningfully address Dr. Patel's legitimate patient safety concerns.

35. Instead, SOVAH discriminated and retaliated against Dr. Patel by subjecting him to adverse treatment, and by wrongfully – and pretextually – terminating his employment.

**Defendants Pretextually Terminated Dr. Patel "For Cause"**

36. In or about January 2018, Dr. Patel treated a mentally disturbed patient who had a history of drug addiction and abuse (hereinafter, "Patient").

37. At all times, Dr. Patel treated the Patient professionally and respectfully.

38. The Patient maintained an unhealthy – and unrequited – infatuation with Dr. Patel, and upon information and belief, verbally assaulted one of Dr. Patel's co-workers.

39. After this incident, and at the request of Dr. Patel, Office Manager Anna Farrar discharged the Patient from the Mt. Hermon practice.

7

40. Shortly after her discharge from the Mt. Hermon practice, the Patient attempted to return to the practice, begging to speak with Dr. Patel, and erratically entering and leaving the office.

41. After several attempts to convince the Patient to leave, receptionist Suzette Bailey asked Dr. Patel to speak with the Patient.

42. Dr. Patel requested that Ms. Bailey contact the police, as the Patient had become increasingly agitated and insistent on speaking with Dr. Patel.

43. In an effort to diffuse a potentially dangerous situation with an unstable patient, Dr. Patel then addressed the Patient, who was alone in the reception area, from behind the reception desk, which is located behind an open partition in the wall.

44. Dr. Patel calmly explained to the Patient that she was no longer eligible for care at Mt. Hermon, and suggested that she visit the nearby Brosville office for care.

45. The Patient remained agitated and became aggressive with Dr. Patel, telling him that she was unable to receive care at the proposed alternate location.

46. In an effort to assist the Patient, Dr. Patel reviewed her medical records, and learned from a colleague that the Patient had been discharged from the Brosville practice after a positive drug screening.

47. Dr. Patel informed the Patient, who remained alone in the reception, that she was correct about her inability to receive care from the Brosville practice and, eventually, the Patient left the Mt. Hermon office.

48. At no time during this encounter did Dr. Patel compromise the confidentiality or security of the Patient's protected health information, or otherwise violate any

relevant privacy laws.

49. However, even though Dr. Patel handled a difficult situation professionally and reasonably due to the Patient's erratic and concerning behavior, the Patient subsequently filed a frivolous Health Insurance Portability and Accountability Act ("HIPPA") complaint against Dr. Patel.

50. In or about April 2018, SOVAH Privacy Officer William Murray interviewed Dr. Patel in connection with Defendants' investigation into the HIPPA complaint. During this interview, Mr. Murray noted that "Danville has a lot of crazies."

51. On or about April 30, 2018, Human Resources Director Christine Caplinoff and Ms. Veneto abruptly terminated Dr. Patel's employment "for cause," citing ethics violations in relation to the frivolous HIPPA complaint, and thus terminating the Agreement between the parties.

52. Defendants' stated reasons for terminating Dr. Patel's employment are, at best, inaccurate, and strongly suggest that his termination, made in close proximity to Dr. Patel's complaints regarding patient safety and requests for federally protected military leave, was pretextual.

53. Moreover, upon information and belief, prior to the filing of the HIPPA complaint, Ms. Farrar informed Ms. Bailey that Defendants' supervisory employees, including Ms. Veneto, Ms. Richardson, and Mr. Larson, had informed Ms. Farrar that Defendants planned to "get rid of" Dr. Patel.

54. Indeed, Dr. Patel's termination occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon both his military status and/or complaints regarding patient safety.

55. Dr. Patel's unwarranted and unlawful termination has negatively impacted his employment options, and prohibited his ability to obtain employment elsewhere.

56. Because the actions taken by supervisory SOVAH employees were taken within the scope of their employment, Defendants are responsible for their actions based upon the doctrine of *respondeat superior.*

### COUNT I: CLAIM FOR DISCRIMINATION BASED UPON SERVICE

57. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

58. USERRA was enacted in 1994 and significantly broadened the protections afforded to those in military service by prohibiting discriminatory actions against persons who served in the uniformed services.

59. Specifically, under the federal protections offered by USERRA, Defendants were prohibited from denying Dr. Patel, a member of the "uniformed service," "retention in employment" or "any benefit of employment" on the basis of his membership in the military, performance of service, or obligation to perform military service. 38 U.S.C. § 4311(a).

60. Dr. Patel is a distinguished veteran who served in the Navy Reserves during his employment with Defendants.

61. Upon information and belief, Defendants were displeased with the amount of

10

leave and scheduling requests Dr. Patel was required to utilize to maintain his Navy training and drill commitments.

62. Defendants illustrated their displeasure – and discriminated against Dr. Patel – by subjecting him to multiple negative and disparaging comments about his mandatory Navy obligations, discouraging him from remaining in the Navy Reserves, improperly requesting that he alter his military drill schedule, and by unlawfully terminating his employment.

63. Defendants' supervisory employees maintained an unlawful discriminatory animus against Dr. Patel, based upon Dr. Patel's military status and need for related scheduling accommodations and leave.

64. This resistance to Dr. Patel's military training and drill commitments was detrimental to both Dr. Patel and his military unit.

65. Dr. Patel's status in the uniformed services was a motivating factor in Defendants' decision to terminate Dr. Patel's employment. 38 U.S.C.A. § 4311(c)(1).

66. As a direct and proximate result of the actions of Defendants, Dr. Patel has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

67. At all times material hereto, the failure to comply with USERRA on the part of Defendants was willful so as to support an award of liquidated damages.

68. The above-described acts by Defendants and employees of Defendants constitute discrimination based upon Dr. Patel's military service in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, Title 38

U.S.C. §§ 4301-4335 ("USERRA").

## COUNT II:  DEFAMATION AND DEFAMATION *PER SE*

69. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

70. Dr. Patel was defamed when Defendants wrongfully terminated him "for cause" on or about April 30, 2018, in connection with a frivolous HIPPA complaint filed against him.

71. Defendants' conduct, per the language included in the Agreement, falsely insinuates that Dr. Patel was terminated for, and accuses him of, misconduct, including, but not limited to, breach of the Agreement, the suspension and/or revocation of Dr. Patel's medical license, conviction of a felony or crime of moral turpitude, unethical or fraudulent conduct, poor performance, uninsurability, and drug and/or alcohol abuse. *See* **EXHIBIT A**, Article IV, Section 4.1.

72. Such false accusations consequently have prejudiced Dr. Patel in his profession, thus constituting defamation *per se*.

73. Defendants' false insinuations and accusations regarding the circumstances surrounding Dr. Patel's termination purport to be statements of fact, not statements of opinion, and egregiously misstate the truth.

74. Defendants publicly published these false and defamatory accusations to others within Dr. Patel's profession, including potential employers and medical malpractice insurers, who heard and understood these false and defamatory accusations to mean that Dr. Patel was legitimately terminated for cause by Defendants, per the terms of

12

the Agreement. *See* **EXHIBIT A.**

75. Defendants had a duty not to defame Dr. Patel, and knew the accusations regarding Dr. Patel were false or, believing them to be true, lacked reasonable grounds for such belief and/or acted negligently in failing to ascertain the truth.

76. As a direct and proximate result of Defendants' conduct, Dr. Patel has suffered humiliation, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, disgrace, scandal, injury to his professional and personal reputations, financial loss, has been hampered in the conduct of his business and affairs, and other damages.

## COUNT III:  BREACH OF CONTRACT

77. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

78. The Agreement, signed by Dr. Patel and Danville Physician Practices, LLC, a wholly-owned affiliate of Defendant SOVAH, offers a three (3) year fixed-term of employment for Dr. Patel, and details the terms and conditions of Dr. Patel's proposed employment with Defendants. *See* **EXHIBIT A.**

79. Defendants offered to employ Dr. Patel according to the terms and representations in the Agreement, which included a specific and definite compensation package, and a fixed-term of employment.

80. Dr. Patel relied on representations in the Agreement to accept employment with Defendants, and accepted Defendants' offer as presented on or about October 12, 2016, thus creating a valid and binding contract, and a legally enforceable obligation of

13

Defendants to Dr. Patel, as of October 31, 2016.

81. As discussed in detail herein, Defendants breached that obligation by denying Dr. Patel a safe and healthy working environment, and violating federal law by discriminating and retaliating against Dr. Patel and wrongfully terminating his employment, based upon Dr. Patel's military status and/or complaints regarding patient safety.

82. Prior to Dr. Patel's wrongful termination, he was performing his work at a satisfactory level and meeting or exceeding Defendants' legitimate business expectations.

83. Any reasons cited by Defendants for Dr. Patel's termination were pretextual as, due to the discrimination faced by Dr. Patel, his termination was, in fact, without cause.

84. As a direct and proximate result of Defendants' breach of the Agreement, Dr. Patel has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

## COUNT IV: FRAUD IN THE INDUCEMENT

85. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

86. Defendants made representations to Dr. Patel in the Agreement, intended to induce Dr. Patel to accept its offer of employment, that caused Dr. Patel to accept Defendants' employment offer and create a binding Agreement between the parties.

87. These representations, clearly provided in the appended Agreement, touched base on such things as his compensation and being protected by a "for cause

14

termination" contract provision. In reality, Defendants had no intent to abide by a "for cause" termination standard or provision and considered Dr. Patel an at-will employee.

88. Dr. Patel would not have entered into the Agreement with Defendants but for its promises, including a specific compensation package and three (3) year fixed-term of employment. *See* **EXHIBIT A**.

89. Accordingly, this representation, memorialized in the Agreement, was material to Dr. Patel's decision making and, to his detriment, Dr. Patel relied on it when accepting Defendants' offer of employment.

90. The Agreement and its fraudulent provisions were tendered to Dr. Patel in early October of 2016 and Dr. Patel endorsed the Agreement on October 12, 2016.

91. As discussed in detail herein, Defendants failed to meet their obligations under the Agreement by denying Dr. Patel a safe and healthy working environment, and violating federal law by discriminating and retaliating against Dr. Patel and terminating his employment, based upon Dr. Patel's military status and/or complaints regarding patient safety.

92. Accordingly, Defendants made a false representation of a material fact for the purpose of procuring an agreement between the parties.

93. Such material misrepresentation, relied upon by Dr. Patel, induced Dr. Patel's acceptance of Defendants' offer of employment, and resulted in fraud.

94. As a direct and proximate result of Defendants' fraudulent inducement, Dr. Patel has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

## COUNT V: WRONGFUL TERMINATION
## PURSUANT TO VIRGINIA CODE § 40.1-51.2:1

95. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

96. The Supreme Court of Virginia has recognized a cause of action for wrongful termination where the termination was based on an employer's violation of a public policy, which is expressly stated in a statute, and the employee is clearly a member of the class entitled to the protection of that policy. *See, e.g., Rowan v. Tractor Supply Co.*, 263 Va. 209 (2002); *Mitchem v. Counts*, 259 Va. 179, 190 (2000); *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

97. Virginia has a stated public policy whereby employees are encouraged to report health and safety violations to their employers. *See* Va. Code Ann. § 40.1-51.2(b) ("[e]mployees or their representatives may bring to the attention of their employer any hazardous conditions that exist …").

98. Virginia further has a public policy that an employer is proscribed from retaliating or discriminating against an employee who makes a health or safety complaint. *See id*. § 40.1-51.2:1.

99. In the instant matter, Dr. Patel was terminated after repeatedly articulating his concerns related to inadequate patient oversight, the unsafe and high volume of patients for which he, and non-physician employees, were responsible, and related patient safety issues to his supervisors.

100.    Dr. Patel was an employee of Defendants prior to his wrongful termination, and therefore, was clearly in the contemplated class of individuals that the above stated Virginia public policies were meant to protect.

101.    Defendants violated Virginia public policy when they discriminated and retaliated against Dr. Patel by wrongfully terminating his employment.

102.    As a direct and proximate cause of Defendants' actions, Dr. Patel has suffered and will continue to suffer pecuniary loss, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

103.    At all times material to this Complaint, Defendants engaged in a practice or practices with malice or reckless indifference to the rights of Dr. Patel, such as to support an award of liquidated and/or punitive damages.


WHEREFORE, Nilay C. Patel, DO, prays for judgment against Defendants SOVAH Health Danville CI d/b/a Danville Regional Medical Center, LLC, and LifePoint Health, Inc., for equitable relief, compensatory, liquidated and/or punitive damages, together with prejudgment interest from the date of termination of Plaintiff's employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.


TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

_____

Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA  24011
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*

18